**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
LAURENCE OXMAN,

                Plaintiff,

      -against-                   **MEMORANDUM OF
DECISION AND ORDER**
13-CV-1741 (ADS)(AKT)

RICHARD DOWNS, individually, PHILIP
CARDINALE, individually, GEORGE
BARTUNEK, individually, and THE TOWN
OF RIVERHEAD,

                Defendants.
----------------------------------------------------------X
**APPEARANCES:**

**Campanelli & Associates, P.C.**
*Attorneys for the Plaintiff*
1757 Merrick Avenue, Suite 204
Merrick, NY 11566
    By:   Andrew J. Campanelli, Esq., of Counsel

**Smith, Finkelstein, Lundberg, Isler & Yakaboski, LLP**
*Attorneys for the Defendants*
456 Griffing Avenue, P.O. Box 389
Riverhead, NY 11901
    By:   Frank A. Isler, Esq.
            David P. Barker, Esq.
            Jean K. Delisle, Esq., of Counsel

**SPATT, District Judge.**

       On April 1, 2013, the Plaintiff Laurence Oxman (the "Plaintiff") commenced this action by filing a Complaint against the Defendants Richard W. Downs ("Downs"), individually; Philip Cardinale ("Cardinale"), individually; George Bartunek ("Bartunek"), individually; and the Town of Riverhead (the "Town," and collectively, the "Defendants") pursuant to 42 U.S.C. §§1983 and 1988. The Plaintiff asserts claims for malicious prosecution both under the Fourth Amendment of the United States Constitution and New York State law.

1

Presently before the Court is a motion by the Defendants to dismiss this action pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). For the reasons that follow, the Court grants the Defendants' motion and dismisses the Complaint.

## I. BACKGROUND

### A. Rule 12(b) Standard for Considering Factual Allegations and Evidence Outside the Complaint

Before reciting the underlying factual allegations of this case, the Court notes, as an initial matter, that evidence outside of the Complaint may not be considered by the Court when deciding a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). See, e.g., DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir.2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.") (citation and internal question marks omitted); Hahn v. Rocky Mt. Express Corp., No. 11 Civ. 8512(LTS) (GWG), 2012 WL 2930220, at *2 (S.D.N.Y. June 16, 2012) ("When deciding a motion to dismiss . . . [e]vidence outside [the complaint] . . . cannot [ ] be considered on review of a 12(b)(6) motion.") (citation and internal quotation marks and alterations omitted).

In this regard, pursuant to Fed. R. Civ. P. 12(d), where matters outside the complaint are presented in connection with a Rule 12(b)(6) motion, "a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) (quoting Fonte v. Bd. of Managers of Continental Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988)).

In this case, both the Defendants, in their motion to dismiss, and the Plaintiff, in his opposition, include several exhibits that are outside of the Complaint. Generally, when a

defendant attempts to counter a plaintiff's Complaint with its own factual allegations and exhibits, such allegations and exhibits are inappropriate for consideration by this Court at the motion to dismiss stage. See, e.g., Dual Groupe, LLC v. Gans-Mex LLC, 932 F. Supp. 2d 569, 572 (S.D.N.Y. 2013) ("Defendants dispute many of the complaint's factual allegations, which the court cannot adjudicate at the motion to dismiss stage.") Nevertheless, in its analysis, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [the] [P]laintiff['s] possession or of which [the] [P]laintiff[ ] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir.1993); see also Karmilowicz v. Hartford Fin. Servs. Group, 494 F. App'x 153, 155–57 (2d Cir. 2012) ("[A] plaintiff cannot evade a properly argued motion to dismiss simply because [the] plaintiff has chosen not to attach [a document on which he relies in bringing suit] to the complaint or to incorporate it by reference.") (citations and internal quotation marks omitted); Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.").

In this regard, the Court finds that it may consider all of the Defendants' exhibits and the Plaintiff's exhibits "without converting the motion[ ] to dismiss into [a] motion[ ] for summary judgment[.]" Dellate v. Great Neck Union Free Sch. Dist., CV 09-2567 AKT, 2010 WL 3924863, at *5 (E.D.N.Y. Sept. 30, 2010), aff'd sub nom. Dellatte v. Great Neck Union Free Sch. Dist., 448 F. App'x 164 (2d Cir. 2012). This is "because 'the record was available to and

clearly known of' by all parties to this action." Dellate, 2010 WL 3924863, at *5 (quoting Bennett v. Tucker, No. 95 Civ. 8029 (SAS), 1996 WL 288202, at *1 n.3 (S.D.N.Y. May 30, 1996)); see also Tiraco v. New York State Bd. of Elections, 12-CV-2273 KAM MDG, 2013 WL 4046257 (E.D.N.Y. Aug. 7, 2013) ("[A] court may also consider 'public documents of which the plaintiff has notice.'") (quoting Brodeur v. City of New York, No. 04-CV-1859 (JG), 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005)); Johnson v. Cnty. of Nassau, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006) ("[T]he Court 'may take judicial notice of the records of state administrative procedures as these are public records, without converting a motion to dismiss to one for summary judgment.'") (quoting Evans v. New York Botanical Garden, No. 02 Civ.3591 RWS, 2002 WL 31002814, at *4 (S.D.N.Y. Sept.4, 2002)).

Further, the Court acknowledges that the Plaintiff's instant action arises from the same facts and circumstances that served as the foundation for his previous § 1983 action, entitled Riverhead Park Corp., et al. v. Cardinale, et al., Case No. 07-CV-4133 (the "RPC Action"). In this regard, on October 3, 2007, the Plaintiff, along with his now deceased business partner, Stanley Blumenstein ("Blumenstein"), and their company, Riverhead Park Corporation ("RPC"), accused Cardinale, Bartunek and the Town, among others, of committing a conspiracy and of violating their procedural due process rights, substantive due process rights and equal protection rights under Fifth and Fourteenth Amendments. The Defendant Downs was not a party to the RPC Action.

In a decision dated March 28, 2013, this Court granted summary judgment in favor of the defendants in the RPC Action and dismissed the RPC Action. The Court rendered this decision after making the following holdings: (1) portions of the plaintiffs substantive and procedural due process claims were not ripe for review due to the failure to exhaust administrative remedies; (2)

4

the substantive due process claim was actually a claim for malicious prosecution and therefore improperly brought under the Fourteenth Amendment; (3) there could be no procedural due process violation because the plaintiffs never commenced an Article 78 proceeding under New York Civil Practice Law and Rules; (4) the Town Board members, including Cardinale and Bartunek, were entitled to absolute immunity; and (5) the individual plaintiffs did not have standing to bring a § 1983 lawsuit on behalf of RPC. See Riverhead Park Cop. v. Cardinale, No. 07–CV–4133 (ADS)(ARL), 2013 WL 1335600 (E.D.N.Y. Mar. 28, 2013).

As such, the Court is acutely familiar with the facts underlying the Plaintiff's current case. Accordingly, the Court shall consider both the pleadings and the Court's prior decisions in the RPC Action. See Gertskis v. U.S. E.E.O.C., No. 11 Civ. 5830(JMF), 2013 WL 1148924, at *1 (S.D.N.Y. Mar. 20, 2013) ("A district court reviewing a motion to dismiss may also consider documents of which it may take judicial notice, including pleadings and prior decisions in related lawsuits.").

Thus, with this in mind, the Court draws the following facts from the Plaintiff's Complaint; the parties' exhibits; and the pleadings and the Court's prior decisions in the RPC Action. The Court construes the facts in a light most favorable to the Plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009).

**B. Underlying Facts**

The Defendant Town is a municipal corporation located within Suffolk County in the State of New York. At all times relevant to this action, Cardinale was the Town Supervisor and a member of the Town Board; Bartunek was a member of the Town Board; and Downs was a Town Code Enforcement Officer.

The Plaintiff was one of two shareholders in RPC, which was a closely-held corporation. Blumenstein was the other shareholder. Blumenstein was also the president of RPC, while the Plaintiff was an officer and director.

In or about 2000, RPC purchased a thirteen-acre parcel of undeveloped land ("the Parcel") located in the Town, on the south side of County Route 58. Located on the Parcel was an area designated as freshwater wetlands. Of relevance, neither Blumenstein nor Oxman ever owned the Parcel in their individual capacity.

When RPC purchased the Parcel, the Parcel was located in the Town's Industrial A Zoning District, which prohibited retail uses but permitted agricultural uses. However, at the time, the Town was in the process of codifying a town-wide Comprehensive Plan, also known as the "Master Plan." This Plan recommended amending the Town Code to rezone most property within the Town. In this regard, the Comprehensive Plan recommended that the Parcel be rezoned to the Town's Business Center Zoning District, which permitted retail uses but not agricultural uses.

In May of 2004, the Plaintiff and Blumenstein, on behalf of RPC, began considering using the Parcel to operate a farm stand, where they would sell local produce in accommodating seasons; have pumpkin picking in the autumn; and sell Christmas trees in the winter. RPC, Blumenstein and the Plaintiff wished to use the Parcel in this way in order to generate income for mortgage and tax payments while they looked for a buyer for the Parcel. Accordingly, RPC, Blumenstein and the Plaintiff began to take steps to pursue agricultural uses on the Parcel.

On September 29, 2004, Blumenstein, on behalf of himself, RPC and the Plaintiff, sent a letter to Bartunek requesting that agriculture be included as a permitted use in the Business Center Zoning District. Thereafter, on September 30, 2004, the Plaintiff had a face-to-face

6

meeting with Bartunek and two other Town Board Members, and advised them that RPC wanted to pursue agriculture uses for the Parcel. According to the Plaintiff, at this meeting, he asked if his rights to farm would be grandfathered in if he engaged in agricultural use of the Parcel before the rezoning occurred. He was told that they would be.

One day later, on or about October 1, 2004, RPC, Blumenstein and the Plaintiff began clearing the Parcel of trees and vegetation, including the area by the wetlands, in order to prepare the Parcel for agricultural use, specifically the planting of a cover crop. In the RPC Action, the Plaintiff, Blumenstein and RPC explained "because a large amount of trees existed on the Parcel, in order for the [them]to make more effective agricultural use of the land, [they] needed to clear and harvest the trees." (RPC Action, Compl., ¶ 67.) RPC, Blumenstein and the Plaintiff did not have any permits to clear the land at the time.

RPC, Blumenstein and the Plaintiff also set up a seasonal pumpkin patch by creating a decorative scene on the property, including the placement of an ornamental shed, adorned with hay bales in front. Their intention was to sell pumpkins, which they had already secured pricing to purchase in bulk. According to the Plaintiff, their agricultural use of the Parcel would have been explicitly exempted from any restrictions pertaining to wetlands under the Town Code.

On October 2, 2004, upon learning about these clearing activities, one or more officers from the Riverhead Town Police visited the Parcel. The workers hired by RPC told the police officers that they were clearing parts of the Parcel for the purpose of preparing it for agricultural use. After receiving this explanation, the police officers left the Parcel without issuing any Summonses or Informations against RPC or the Plaintiff.

The next day, October 3, 2004, one or more police officers from the Riverhead Town Police against visited the Parcel. The police officers advised the Plaintiff that he was violating

7

the Town Code because he was using equipment on the Parcel on a Sunday. However, the Plaintiff informed the police officers that the use of equipment for agricultural purposes on a Sunday was permitted under the Town Code. As such, the police officers once more left the Parcel without issuing any Summonses or Informations.

Nevertheless, in response to the clearing activity at the Parcel, on October 4, 5 and 7, 2004, RPC was served with stop work orders ("SWO"), citing (1) a violation of Town Code § 52-8.2, Land clearing Permits; (2) a violation of Town Code § 108-73A, permits; and (3) violations of Chapter 52, 63, 107 and 108, for the clearing of land without a permit. Neither RPC, Blumenstein nor the Plaintiff ever appealed to the Town's Zoning Board of Appeals from the issuance of the SWOs issued by the Town.

At about this time, on October 5, 2004, the Town adopted Riverhead Town Board Resolution #939 of 2004. Resolution 939 rezoned a considerable amount of land within the Town from Industrial A Zoning District to Business Center Zoning District, including the Parcel. The rezoning went into effect on October 12, 2004.

Beginning on October 5, 2004, allegedly at the direction of Bartunek and Cardinale and over the span of seventy-two hours, Downs issued fifty-one Informations to the Plaintiff and RPC in connection with their alleged illegal activity on the Parcel. In this regard, they were charged with violating Riverhead Town Code, Sections 52-6; 52-8.2, 63-3; 107-4(A)&(B); 107-6; 107-7(F) & (H); 107-8(A)(B)&(C); 108-46(A); 108-73(A); 108-74.1; 108-78; 108-129(B); 108-130(B)(3) and 108-130(B)(3)(b). These charges included accusations that RPC and the Plaintiff had cleared vegetation within 150 feet of a freshwater wetland without a permit and cleared trees without a land clearing permit. Of the fifty-one Informations, the Plaintiff was only issued five of them, while RPC received the remaining forty-six. According to the Plaintiff,

8

Bartunek and Cardinale had directed Downs and others to issue these criminal violations against the Plaintiff and RPC because they were enraged that the Plaintiff and RPC were attempting to grandfather their right to make agricultural use of the Parcel.

Further, on October 22, 2004, the Town commenced an action, <u>Town of Riverhead v. Riverhead Park Corp.</u>, Index No. 25539/2004, (N.Y. Sup. Ct.), against RPC and the Plaintiff, which was assigned to the Honorable Joseph Farnetti ("Justice Farnetti")in the Supreme Court of Suffolk County ("the State Action"). On that same date, the Town obtained a Temporary Restraining Order ("TRO") from the Honorable Elizabeth Hazlitt Emerson enjoining the Plaintiff and RPC from any further clearing, filling or agricultural practices on the Parcel. The TRO was modified on April 18, 2005 and thereafter remained in place until March 31, 2008, when the Town's motion for a preliminary injunction was denied by Justice Farnetti. On October 5, 2010, Justice Farnetti granted the motion by the Plaintiff and RPC for summary judgment dismissing the Town's complaint on the ground that the Town lacked capacity to sue without a Town Board resolution authorizing the suit, which had not occurred.

Eventually, the fifty-one complaints that had been brought against the Plaintiff and RPC by the Town were superseded by twelve Superceding Informations, two of which were against the Plaintiff and ten of which were against RPC. Of the two Superceding Informations, one was dismissed before trial and the second one was dismissed after trial by the Honorable Deborah E. Kooperstein of the Justice Court of the Town of Southampton on April 1, 2012. As for the ten Superceding Informations brought against RPC, they were dismissed on the procedural ground that a claim had not been filed in <u>RPC</u>'s bankruptcy proceeding, which had been pending at the time.

9

With respect to the sole Superceding Information against the Plaintiff that went to trial, Superceding Information #3817, it charged the Plaintiff with violating Town Code § 107-4(b). This provision makes it

> unlawful for any person, without obtaining a written permit issued by the Town of Riverhead, to[ ] . . . [d]ig, dredge, clear any vegetation or in any other way alter or remove any material in or without 150 feet of any freshwater wetlands, natural or altered drainage systems, or other watercourses, or within 300 feet of the boundary of any tidal water or tidal wetlands.

Riverhead Town Code § 107-4(b). However, according to Town Code § 107-5, "agricultural activities are exempt" from the permit requirement of Town Code § 107-4(b). In this regard, "agricultural activity" is defined in the Town Code as including, in relevant part, "the activity of an individual farmer or other landowner in[ ] . . . [t]he selective cutting of trees; [ ] [t]he clear-cutting of vegetation, other than trees, for growing agricultural products." Riverhead Town Code § 107-3(A). Nevertheless, the Town Code explicitly states that "agricultural activity "[d]oes not mean [ ] [c]lear-cutting trees." Riverhead Town Code § 107-3(B).

In Superceding Information #3817, Downs described the Plaintiff's October 5, 2004 activity on the Parcel as follows:

> I observed [ ] two excavators with grapple attachments pulling tree stumps and roots from the soil and placing such upon the [Parcel]. I also observed various piles of trees that had been cleared from the property, clear-cut trees and various tree stumps, which had recently been cut upon said property. The soil was disturbed through out [sic] the property with the trees and vegetation having been removed and various areas of said property had been exposed whereby you could see sand. The aforementioned activities were conducted within 150 feet of freshwater wetlands. . . . The aforementioned activities caused all of the trees and vegetation situated within such area to be removed and said freshwater wetlands was graded over and filled in with soil. On said date and time I also observed an unknown white male operating the tub grinder upon the easterly side of said property for cutting and grinding of trees and tree stumps. Adjacent to said tub grinder was

10

> a large pile of woodchips approximately 25 feet in height and 40
> feet in diameter. Prior to the aforementioned activities I had
> previously observed the [Parcel] during my four years as an
> Ordinance Enforcement Officer for the Town of Riverhead and
> said property was covered with trees and vegetation.

(Def. Mot., Exh. 1.)

Although the Plaintiff's present Complaint suggests that he and RPC only selectively removed trees on the Parcel, Downs's description is consistent with the admissions made by the Plaintiff in his previous complaint in the RPC Action. In this regard, the Plaintiff admitted that "[o]n Saturday, October 2, 2004 . . . [he, Blumenstein and RPC] had the Parcel cleared of trees in the active pursuit of agricultural operations on their property[.]" (RPC Action, Compl., ¶ 70.) As stated above, they did so "because a large amount of trees existed on the Parcel" and thus, "in order . . . to make more effective agricultural use of the land, [they] needed to clear and harvest the trees." (RPC Action, Compl., ¶ 67.)

## II. DISCUSSION

### A.  Legal Standard on a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

It is well-established that a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In this regard, as suggested above, when deciding a motion to dismiss, a court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Iqbal, 556 U.S. at 678; Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir. 2007).

As such, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679. However, "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir.2009) (quoting Iqbal, 556 U.S. at 678).

## B. The Legal Standard under Monell

Pursuant to the Supreme Court's holding in Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a municipal entity, like the Defendant Town in this case, may be held liable under 42 U.S.C. § 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." Id. at 694; see also Harper v. City of New York, 424 F. App'x 36, 38 (2d Cir. 2011) (finding that in order to impose liability on a government entity under 42 U.S.C. § 1983, a plaintiff must "show two basic elements: (1) 'the existence of a municipal policy or custom . . .' and (2) 'a causal connection— an affirmative link—between the policy and the deprivation of his constitutional rights. ") (quoting Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985)).

"The policy or custom need not be memorialized in a specific rule or regulation." Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir.1996) (citing Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir.1992)). Instead, such municipal policies "include[ ] the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson,131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (citation omitted).

Also, in "limited circumstances," a municipality can be liable under § 1983 for its failure "to train certain employees about their legal duty to avoid violating citizens' rights . . . ." Id. For this reason, a policy, custom or practice of the entity may be inferred where "the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (quoting Kern, 93 F.3d at 44).

**C. As to Whether the Plaintiff Has Stated a Claim for Malicious Prosecution**

In this case, the Plaintiff brings a cause of action under 42 U.S.C. § 1983 against the Defendants for malicious prosecution in violation of the Fourth Amendment, as well claim for malicious prosecution under New York State law.

A plaintiff who brings a federal malicious prosecution claim must allege all the elements of malicious prosecution under state law. See Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002); see also Janetka v. Dabe, 892 F.2d 187, 189 (2d Cir. 1989) ("A claim of malicious prosecution brought pursuant to section [ ]1983 ... is governed by state law in the absence of federal common law."). "To state a claim under New York law for the tort of malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). In addition, the Second Circuit requires a plaintiff demonstrate that there was "a post-arraignment seizure," since a § 1983 malicious prosecution claim is "grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013).

It appears to the Court that case law from this Circuit is somewhat unclear with respect to the approach courts should take when considering this final element. See, e.g., Kennedy v. City of New York, 11-CV-1451 ERK SMG, 2013 WL 3490351, at *5 (E.D.N.Y. July 10, 2013) (noting that "the Second Circuit's cases on this issue are hardly a seamless web"). In this regard, in Burg v. Gosselin, 591 F.3d 95 (2d Cir. 2010), the Second Circuit evaluated a plaintiff's § 1983 claim brought against a canine control officer who had issued a summons to the plaintiff based on allegations that his dog was trespassing and barking. The Second Circuit held "that the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." Id. at 98. The Second Circuit further noted that although "the number of [court] appearances may bear upon whether there was a seizure, [ ] it is hard to see how multiple appearances required by a court, or for the convenience of the person answering the summons, can be attributed to the conduct of the officer who issues it." Id. at 98.

Following Burg, "the weight of district court authority in circumstances . . . involving a plaintiff charged with non-felony offenses who was neither arraigned nor physically detained but who might have made a number of court appearances [ ] counsel[ed] against finding a constitutional injury." Dellutri v. Vill. of Elmsford, 895 F. Supp. 2d 555, 571 (S.D.N.Y. 2012) (collecting case). For example, "in Parkash v. Town of Southeast, [10 CV 8098 VB, 2011 WL 5142669 (S.D.N.Y. Sept. 30, 2011), aff'd, 468 F. App'x 80 (2d Cir. 2012)], the court held that where the plaintiff was required to appear in court on 15 occasions, but faced no travel restrictions, no Fourth Amendment seizure occurred." Fanelli v. City of New York, 13 CIV. 1423 KBF, 2013 WL 6017904, at *3 (S.D.N.Y. Nov. 1, 2013) (citing Parkash, 2011 WL 5142669, at *15); but cf. Murphy v. Lynn, 118 F.3d 938, 946 (2d Cir. 1997) (finding a

14

"seizure[ ] within the meaning of the Fourth Amendment" where "one of the conditions imposed upon [the plaintiff's release] was that he not leave the State of New York pending resolution of the charges against him" and "[h]e [ ] was called for court appearances some eight times during the year in which his criminal proceeding was pending").

Nevertheless, more recently, in Swartz, the Second Circuit described its previous ruling in Burg as "dictum" and apparently modified its position with respect to this issue. Specifically, the Second Circuit found there to be a post-arraignment seizure where one of the plaintiffs was arrested for disorderly conduct and "was required to appear in court [on three occasions over the course of several years] in connection with criminal proceedings" related to that charge. Swartz, 704 F.3d at 108, 112; see also MacPherson v. Town of Southampton, 07-CV-3497 DRH AKT, 2013 WL 6058202, at *5 (E.D.N.Y. Nov. 14, 2013). The Second Circuit concluded that "a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty." Id. at 112 (internal quotation marks and brackets omitted); see also MacPherson, 2013 WL 6058202, at *5. In addition, the Second Circuit questioned the Burg court's suggestion that multiple court appearances were not attributable to the officer who issued the summons and "decline[d] to apply that dictum to the different context of a plaintiff who was required to appear in court in connection with criminal proceedings initiated by the defendant police officer." Id.

However, a month after issuing its decision in Swartz, the Second Circuit issued a summary order in Faruki v. City of New York, 517 F. App'x 1 (2d Cir. 2013), in which it cited to Burg and held that "the proceedings against [the plaintiff]," who had been charged with trespass, constituted "an insufficient deprivation of liberty to support a Fourth Amendment malicious prosecution claim," as they "placed no restriction on her other than a requirement that

15

she appear in court on two occasions." Id. at 2. The Faruki decision does not cite to or otherwise acknowledge the Second Circuit's ruling in Swartz. In addition, as a summary order, Faruki does not have any precedential effect.

Since the Second Circuit's decision in Swartz, at least one district court, in an attempt to reconcile Swartz with Burg, has summarized the Second Circuit's position on this issue as follows: "[W]hile the issuance of a pre-arraignment, non-felony summons that merely requires a later court appearance does not constitute a Fourth Amendment seizure, the requirement that a plaintiff appear in court, post-arraignment, in connection with criminal proceedings, does constitute a Fourth Amendment seizure." MacPherson, 2013 WL 6058202, at *5. Other district courts have ignored Swartz and have continued relying on Burg, such as in Norwood v. Salvatore, 3:12-CV-1025 MAD/DEP, 2013 WL 1499599 (N.D.N.Y. Apr. 10, 2013), where the court found that the "plaintiffs have failed to plead a 'seizure' to satisfy the constitutional element" of a federal malicious prosecution claim, because they did not "specify the number of court appearances made in connection with the charge" and "[t]here [was] no evidence that [the] plaintiffs were required to post bail, or that their ability to travel was limited." Id. at *14; see also Beck v. City of New York, 12 CIV. 9231 RA, 2014 WL 80544, at *2 (S.D.N.Y. Jan. 3, 2014) ("[T]he Circuit has since reaffirmed Burg, and concluded that a summons requiring even multiple court appearances did not rise to the level of a seizure.") (citing Faruki, 517 F. App'x at 1). Still another district court, failing to acknowledge Faruki, held that it was "bound to follow" Swartz's holding "that a post-arraignment obligation to answer criminal charges and several court appearances [were] a sufficient deprivation of liberty," since Swartz was "the most recent case." Kennedy v. City of New York, 11-CV-1451 ERK SMG, 2013 WL 3490351, at *5 (E.D.N.Y. July 10, 2013) (comparing Burg and Swartz).

16

In this case the Court is confronted with a Complaint which alleges that the Plaintiff was issued five Informations and two Superceding Informations charging him with violating the Town Code, which are non-felony offenses. The Informations and Superceding Informations ultimately required the Plaintiff to make approximately eleven court appearances over the course of seven years. Two of these appearances were for his first and second arraignments on the Informations and Superceding Informations respectively, and the other nine were for the trial. At no point does the Plaintiff allege that he had to make any pre-arraignment appearances or any post-arraignment, pre-trial appearances. While the Court is inclined to find that the circumstances here satisfy the fifth element of a § 1983 malicious prosecution claim under Swartz, the Court also recognizes that Faruki, Burg, and several other district court decisions would seem to support the opposite outcome.

However, the Court need not resolve the question of whether or not, based on the following allegations, the Plaintiff has properly alleged a Fourth Amendment seizure under the Second Circuit's ambiguous precedent. This is because the Court finds that the probable cause element of the Plaintiff's malicious prosecution claim is wanting.

In this regard, the existence of probable cause serves to defeat a claim of malicious prosecution in both state and federal proceedings. "When determining whether probable cause exists courts 'must consider those facts available to the officer at the time of the arrest and immediately before it.'" Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) (quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir.1996)); see also Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) ("The relevant question . . . is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the officer's conduct] to be lawful, in light of clearly established law and the information the . . .

17

officers possessed."). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citing Dunaway v. New York, 442 U.S. 200, 208 n.9, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979)).

Here, in the Court's view, as a matter of law, the Defendants had probable cause to pursue their prosecution of the Plaintiff for violating the Town Code. According to both the Plaintiff's admissions in the RPC Action and Downs's description in Superceding Information #3817, the Plaintiff cleared the Parcel of all trees over the course of a few days. As such, it was reasonable for the Defendants to assume that the Plaintiff's actions were not exempt agricultural uses and were, therefore, in violation of the Town Code. In this regard, as discussed above, Town Code §107-3(B) explicitly states that "clear-cutting trees" is not considered an agricultural activity, so that committing such an activity within 150 feet of a freshwater wetland does not, in fact, fall into the agricultural use exemption found in Town Code § 107-5(B)(6).

Instructive is the court's decision in Parkash. In that case, the court held, in relevant part, as follows: "[T]he facts pleaded in the amended complaint support an inference that the appearance tickets and informations were issued based on probable cause: plaintiffs openly and continuously maintained a property in violation of the town code, and defendants prosecuted them for those violations." Parkash, 2011 WL 5142669 at *4.

Similarly, relying on the Plaintiff's own assertions from his complaint in the RPC Action, the Court finds that the Defendants here had probable cause to believe that the Plaintiff was openly violating the Town Code by clear-cutting trees, which was not considered an agricultural activity under the Town Code and thus required a permit if done within 150 feet of freshwater

18

wetlands. Indeed, a reasonable person in the Defendants' position could have easily interpreted the Town Code in a similar fashion and, thus, would believe that the issuing and prosecution of the Informations and Superceding Informations was warranted. Further, while the Riverhead Town police officers did not issue any Summonses or Informations against the Plaintiff or RPC, believing their actions were exempt agricultural use, the Court is unpersuaded that this factual allegation indicates the Defendants' actions were unreasonable. This is because when Downs, in his capacity as a Town Code Enforcement Officer and at the alleged direction of Bartunek and Cardinale, issued the Informations, it was not unreasonable for him to interpret the Town Code as offering no exemption for the Plaintiff's activity of clear-cutting trees on the Parcel, even under the agricultural use exemption.

Accordingly, because probable cause existed for the Defendants' issuing and prosecution of the Informations and Superceding Informations, the Plaintiff cannot state a claim for malicious prosecution under either federal or state law. As such, his Complaint is dismissed with prejudice.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) **is granted**; and it is further

**ORDERED,** that the Plaintiffs' Complaint is dismissed with prejudice; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
February 14, 2014          _____/s/ Arthur D. Spatt_____
                                          ARTHUR D. SPATT
                                    United States District Judge